UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY T. MOROFSKY,

    Plaintiff,

v.                                        Case No. 1:09-cv-145
                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                        /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on May 24, 1958 and completed the 12th grade (AR 61, 77).[1] She alleged a disability onset date of March 1, 2004 (AR 61). Plaintiff had previous employment as a janitor, kitchen helper and a stocker at K-Mart (AR 90, 443-45). Plaintiff identified her disabling conditions as Hepatitis C, chronic pancreatitis, diabetes, neuropathy of the feet, poor circulation in the lower extremities, depression, body swelling, pain in back and left side, thyroid problems, gastric reflux and emphysema (AR 70-71). On September 2, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 15-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 1, 2004, and that she meets the insured status requirements of the Social Security Act through March 21, 2007 (AR 25). At step two, the ALJ

found that plaintiff suffered from severe impairments of: diabetes; pancreatitis; dysthymic disorder; a substance addiction disorder, presumably in remission; Hepatitis C; and clawfeet (AR 25). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 25).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform simple, unskilled light work as defined in 20 CFR 404.1567(b) except for no prolonged standing or walking beyond an hour at a time" (AR 26). The ALJ also found that plaintiff had no past relevant work (AR 26). At the fifth step, the ALJ determined that plaintiff "would be able to perform the requirements of representative occupations such as select assembly, visual inspector, sorter and cashier jobs" (AR 25).[2]  Accordingly, the ALJ determined that plaintiff was not under a disability at any time from March 1, 2004 through the date of the decision (AR 26).

## III. ANALYSIS

Plaintiff has raised three issues on appeal.

**A.  Was the claimant afforded the rights to a hearing to which she was legally entitled?**

The record reflects as follows. When her claim was denied initially on January 10, 2006, plaintiff was notified in writing about the nature of the hearing process, e.g., that witnesses may testify at her hearing and that she may question them, that it was "very important" for her to attend, to notify the ALJ if she could not attend, that the hearing could be rescheduled if she had "a

---

[2] The vocational expert testified that 32,800 such jobs existed (AR 450).

good reason," and that failure to attend the hearing could result in dismissal (AR 49). A hearing was scheduled. At the time of the hearing, the ALJ made the following statement:

> Just for a way of introduction and background, the case, this case, was set for hearing today, July 21, at 10:30 a.m. Neither Claimant nor her attorney appeared. There were some conversations between the hearing office and the Claimant's attorney last week. They were asking for a continuance. I denied the continuance, but for some reason they felt that by merely asking for the continuance it would be granted and so they assumed, wrongly, that the case was continued. However, I spoke to Claimant's attorney on the telephone, and she indicated she was in error, and should not have assumed the case was continued, but of course, now that it's 11:30 we have another case scheduled. We can't hear the case now anyway. So to make a long story short, what we came up with is the Claimant, or, at least, her attorney will appear for the hearing at 1:30 on July 23. However, I pointed out that the ME is scheduled only -- is not scheduled for that day and Claimant's attorney gave me permission to take the ME testimony without her. So with that -- by way of that introduction, I'll proceed to do that and then we'll finish the hearing on Wednesday afternoon.

(AR 415).

The ALJ gave a more detailed version of events in his decision:

> A hearing was scheduled before the undersigned on July 21, 2008, in Lansing, Michigan. One week before the scheduled hearing claimant and her attorney requested a postponement of the hearing, claimant citing gallbladder surgery which claimant had undergone two weeks earlier. Records received, however, showed that a laparoscopic cholecystectomy had in fact been performed on June 25, 2008, or slightly less than a month prior. The undersigned denied the request for postponement, reasoning that given the fact that a month had passed since what is relatively minor surgery, there should have been no reason absent any complications that claimant could not appear, finding that good reason for postponement was not demonstrated. That message was conveyed to claimant's attorney, who apparently previously assured claimant that a postponement would be granted. On the day of the hearing claimant did not appear. She was contacted and told the hearing had not in fact been postponed. Claimant's attorney was given the opportunity to appear later in the day, but declined. She acknowledged having wrongly assumed that a postponement had been granted. Allen Hauer, Ph. D., a psychologist, was present as medical expert at the scheduled hearing. His availability was limited to that particular day. Claimant and her attorney upon being asked if they had any objections to the undersigned securing testimony from Dr. Hauer that day voiced none. As such his testimony was secured. They also agreed to be present on July 23, at which time claimant would have an opportunity to offer her testimony. Testimony

5

was received on July 23 along with that of Sandra Steele, a vocational expert. On July 21 claimant's representative was Nancy Anderson, but on July 23 Colleen Selke was present as claimant's representative.

(AR 15-16).

The ALJ took this opportunity to ask the medical expert (ME) Allen Hauer, Ph.D., questions regarding plaintiff's mental condition. Dr. Hauer based his testimony on a review of the documentary evidence (AR 416). The doctor evaluated plaintiff's condition under the Listings 12.04 (affective disorder) and 12.09 (substance addiction) (AR 416). In evaluating the B criteria for the Listings, Dr. Hauer opined that plaintiff suffered from mild or moderate symptoms (AR 418-20). The doctor noted that the symptoms from plaintiff's dysthymic disorder would "wax and wane in relation to normal life stressors," resulting in periods of no symptoms and periods of moderate symptoms (AR 418). Dr. Hauer felt that plaintiff had a "good" ability to perform work related activities (e.g., relating to co-workers and supervisors, interacting with the public, using judgment in the work place, and dealing with changes in work routine) (AR 420-21). The doctor felt that plaintiff had a good ability to understand complex instructions and an excellent ability to understand simple instructions (AR 421). The doctor further testified that without the substance addictions, plaintiff would have "generally no limitations" (AR 421). The vocational expert also attended and apparently took notes (AR 421-22).

The ALJ resumed the hearing on July 23, 2008, making the following statement:

> [J]ust before we went on the record, I gave you a copy of the ME testimony from Monday when this case was scheduled for Monday at 10:30. We took the ME testimony at that time because the ME was not available today when we reset the case. The way we proceed is your attorney will ask you questions. When she's finished, there might be some things that I would need to ask you myself. . .

(AR 425). The ALJ then heard testimony from plaintiff and the vocational expert (AR 426-52).

6

Plaintiff contends that the ALJ erred when he conducted the examination of the medical expert without plaintiff or her attorney present. "Due process requires that a social security hearing be 'full and fair.'" *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996), quoting *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). This court has previously observed that while a claimant in a disability hearing is not entitled to unlimited cross-examination, "[t]he law and regulations provide that a party is entitled to conduct such cross-examination as may be required for a 'full and true disclosure of the facts.' 5 U.S.C. § 556.(d); *see* 20 C.F.R. § 404.950(e)." *Moore v. Secretary of HHS*, No. 4:91-cv-110, 1992 WL 300849 (W. D. Mich. Aug. 10, 1992). The agency's regulations provide that the ALJ shall allow a disability claimant to examine witnesses:

> (e) Witnesses at a hearing. Witnesses may appear at a hearing in person or, when the conditions in § 404.936(c) exist, by video teleconferencing. They shall testify under oath or affirmation, unless the administrative law judge finds an important reason to excuse them from taking an oath or affirmation. The administrative law judge may ask the witnesses any questions material to the issues and <u>shall allow</u> the parties or their designated representatives to do so.

20 C.F.R. § 404.950 (emphasis added).

Here, the ALJ did not allow plaintiff or her counsel to question the medical expert, Dr. Hauer as required by § 404.950(e). Dr. Hauer was key witness, if not *the* key witness, in determining that plaintiff was not disabled. *See* discussion, *infra*. A Social Security claimant "should be able to cross-examine witnesses appearing at the hearing whose testimony undercuts his claim." *Alvarez v. Bowen*, 704 F.Supp. 49, 53 (S.D. N.Y. 1989). Under the circumstances of this case, arguably could be said not to have had a "full and fair" hearing.[3] However, plaintiff's counsel

---

[3] Both parties cite portions of the Agency's Hearings, Appeals and Litigation Law Manual ("HALLEX") in support of their respective positions. Neither party, however, has presented a comprehensive discussion applying HALLEX to the facts of this case. While the court can consider the procedures set forth in HALLEX, the manual is not binding on the court. *See Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir. 2008).

admitted it was her fault that she and her client missed the scheduled hearing, and she agreed without objection that the ALJ could examine the medical expert in plaintiff's absence. Plaintiff's attorney also waived an opportunity to appear later the same day. In any hearing, a party may waive whatever rights she has to cross-examine a witness, and a hearing before an ALJ is no different. But while it appears plaintiff waived cross-examination of a medical expert here, it appears she can nevertheless be afforded that opportunity again, for reasons set forth below. See Sections III. B and C, *infra*.

> **B.** **Did the ALJ's hypothetical questions posed to the vocational expert support the denial of benefits with any substantial evidence?**
>
> **C.** **Has the Commissioner erred in concluding that the effects of substance abuse "in remission" are not to be considered as evidence of disability?**

Plaintiff's second and third claims are related. In her second claim, plaintiff contends that the ALJ posed an inaccurate hypothetical question to the vocational expert (VE). In her third claim, plaintiff contends that the ALJ did not properly address her substance abuse. The ALJ posed the following hypothetical:

> If you assume an individual the Claimant's age, education, and work experience were limited to light work that would allow for change of position from sitting to standing during the work itself in addition to regular work breaks, and that would be simple, repetitive, and routine in nature, and all the areas of functioning from a mental standpoint would be at least good, meaning some limitation, but overall ability being satisfactory as per the medical expert testimony, would there be jobs that exist that such an individual could perform?

(AR 450). In response to the question, the VE testified that plaintiff could perform some 32,800 jobs (AR 450).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the

8

plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ should have described plaintiff's mental functioning as "moderate" rather than "good." Plaintiff's contention is based upon both Dr. Hauer's opinion that plaintiff sometimes suffered from moderate symptoms and the opinions of the DDS examining psychologist, Steve Geiger, Ph.D. (AR 295-300). Dr. Geiger's report noted that plaintiff's fine and gross motor skills appeared compromised; that she seemed to have a problem with balance; that her clothing was untidy and disheveled; and that her grooming and hygiene were poor (AR 298). Her level of motor activity was slow, she reported being dependent on others, and reported feeling worthless, hopeless and guilty, with somatic difficulties including problems with sleep, difficulties with appetite, fatigue and weakness (AR 298). She appeared depressed, anxious and emotionally flat (AR 298). Plaintiff had problems with memory, could not recall recent presidents or the current governor, gave tangential responses to questions, and gave her correct birth date but the wrong age (AR 298). She was, however, cooperative, verbal, friendly, engaged in the assessment process and appeared to have good contact with reality (AR 298). The examiner felt that plaintiff was not exaggerating or minimizing her symptoms, and offered these diagnoses: post traumatic stress

9

disorder; major depression (recurrent, moderate); panic disorder with agoraphobia; opioid dependence (on Agonist therapy); nicotine dependence; alcohol dependence (sustained full remission); cocaine dependence (sustained full remission); and cannabis dependence (sustained full remission) (AR 298). The examiner felt that she had a poor prognosis and was not able to manage her funds (AR 299-300).

The record also included the opinion of DDS psychologist Rom Kriauciunas, Ph.D., who found plaintiff to have a mental RFC that was substantially more limited than that expressed by Dr. Hauer:

> Claimant is able to do unskilled work. Is able to do simple tasks on a sustained basis. Claimant is moderately limited in her ability to remember, carry out detailed instructions, to maintain attention and concentration for extended periods. Also, is moderately limited in ability to interact with the general public, to maintain socially appropriate behavior, and to respond to changes at work.

(AR 303).

Plaintiff also contends that the ALJ erred by considering the continuing effects of plaintiff's prior use of substances, "in spite of the fact that their use has been stopped." Plaintiff's Brief at 13. Under the applicable federal law, 42 U.S.C. § 423(d)(2)(C), drug addiction or alcoholism may not be a material factor to a disability finding. *Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004). In accordance with this restriction, an ALJ should look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse. *Id.*

Plaintiff refers to 20 C.F.R. § 404.1535 ("How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability")[4], which provides as follows:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability

20 C.F.R. § 404.1535.

---

[4] Plaintiff cites 20 C.F.R. § 416.935, the version of this regulation applicable to Supplemental Security Income claims.

It does not appear that the ALJ followed the process as set forth in § 404.1535. The ALJ did not explicitly address whether plaintiff was disabled in the absence of the substance abuse. At one point, the ALJ observed that "[t]o what extent her substance-abuse has contributed to her complaints of depression is less than completely clear, although a number of the drugs not to mention the alcohol which claimant has taken have the effect of being a depressant" (AR 23). Then, the ALJ cited Dr. Hauer's opinion that "even considering the impact of the substance abuse that claimant had good ability to handle the mental demands of unskilled work, that opinion essentially corresponding with that of the mental health professions for the Michigan Disability Determination Services" and that "[s]uch limitations would allow at least for simple, repetitive, unskilled work" (AR 24). In short, the ALJ did not provide the type of clear determination of whether substance abuse a contributing factor material to the determination of disability contemplated by § 404.1535.

In addition, the court disagrees with the ALJ's determination that Dr. Hauer's opinion "essentially corresponded" with that of the two DDS psychologists. Dr. Geiger, the examining psychologist, felt that plaintiff had a considerable number of deficits that interfered with her daily functioning. Dr. Kriauciunas opined that while plaintiff could do simple, unskilled work, she had moderate limitations. These opinions differ significantly from Dr. Hauer, who felt that plaintiff's ability to function mentally was good, that she had a good ability to follow complex instructions, that she had an excellent ability to follow simple instructions, and that she had "generally no limitations" in the absence of her substance addictions (AR 421). Based on this record, substantial evidence does not support the ALJ's determination that Dr. Hauer's opinion essentially corresponded with that of the DDS health professionals (AR 24).

Accordingly, the court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's mental RFC, including the effects of plaintiff's substance abuse as a contributing factor to her disability. The ALJ should take this occasion to afford plaintiff the opportunity to question the medical expert if she desires.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings not inconsistent with this report.

Dated: January 19, 2010                     /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).